

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-15-2007

# Whelan v. Teledyne Metal

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1460

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Whelan v. Teledyne Metal" (2007). *2007 Decisions.* Paper 1468.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1468

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 06-1460

EDWARD J. WHELAN,
Appellant,

v.

TELEDYNE METALWORKING PRODUCTS;
ALLEGHENY TECHNOLOGIES INCORPORATED

Appeal from the Final Order of the United States District Court
for the Western District of Pennsylvania
(No. 01-cv-01316)
District Judge: William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
March 5, 2007

Before: SLOVITER and AMBRO, Circuit Judges, and BRODY,* District Judge

(Filed March 15, 2007)

OPINION

BRODY, District Judge

---

* Hon. Anita B. Brody, United States District Court for the
Eastern District of Pennsylvania sitting by designation.

Appellant Edward Whelan suffers from a degenerative eye disease that occludes his central vision. Whelan sued his former employer, Teledyne Metalworking Products, for violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. The case went to trial, and the jury found for Teledyne. Challenging the sufficiency of the evidence underlying the verdict, Whelan moved for judgment as a matter of law under Fed. R. Civ. Proc. Rule 50(b), or in the alternative, for a new trial under to Fed. R. Civ. Proc. Rule 59. The District Court denied Whelan's motions, and we affirm.[1]

I.      Background[2]

Whelan began working for Teledyne in 1965, first as a production worker and then as a sales engineer for Teledyne's cutting tools division. In 1993, Whelan first notified Teledyne of his eye condition, and he requested a transfer to an outside sales job. Teledyne identified such a position for Whelan in a separate unincorporated division of Teledyne. After two years, Whelan advised Teledyne that he could no longer work in outside sales because of his worsening vision. As an accommodation, Teledyne provided Whelan with a computer and special software to permit Whelan to work as a marketing coordinator out of his home in Pittsburgh.

---

[1]The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has final order jurisdiction under 28 U.S.C. § 1291.

[2]The facts will be stated in the light most favorable to Teledyne, the verdict winner. Grazier v. City of Philadelphia, 328 F.3d 120, 128 (3d Cir. 2003).

In 1998, Teledyne's financial condition worsened. Seeking administrative efficiencies, it consolidated operations in the company's Grant, Alabama, facility. Teledyne wanted to facilitate closer supervision of members of the marketing department, to encourage better communication among department members, and to resolve issues quickly and informally. For these reasons, Teledyne concluded that Whelan would have to move to Grant, and thus it could no longer permit Whelan to continue working from home in Pittsburgh.

When Teledyne informed Whelan of the transfer to Grant, Whelan's attorney contacted Teledyne's human resources department about Whelan's situation. On at least two occasions, Teledyne sent letters to Whelan's attorney requesting information about what accommodations Whelan might need to perform the essential functions of a marketing coordinator. Whelan's attorney responded with only one proposed accommodation, namely, working at home from Pittsburgh, or in the alternative, a 12-year severance package. It became clear to Teledyne's management that Whelan was unwilling to move to Grant, regardless of accommodations that might become available there. Teledyne informed Whelan that it would terminate him if he did not transfer, but Whelan never responded. In March 2000, Teledyne terminated him.

Whelan brought claims against Teledyne alleging that it terminated him because of his disability, that it failed to provide a reasonable accommodation and that it failed to engage in the ADA's "interactive process" in good faith.

The case went to trial. On his reasonable accommodation claim, the jury was

instructed without objection by either party to find for Whelan if Whelan proved: (1) he proposed an accommodation; (2) the accommodation was reasonable, available, and would have allowed him to perform the essential functions of the job; and (3) Teledyne unreasonably refused to provide the accommodation. Appellee's Br. at 27.[3]

On his interactive process claim, the jury was instructed without objection by either party to find for Whelan if he proved the following: (1) Teledyne knew of his disability; (2) Whelan requested accommodations or assistance for his disability; (3) Teledyne did not make a good faith effort to assist him in identifying accommodations; and (4) Whelan could have been reasonably accommodated but for Teledyne's lack of good faith.

The special interrogatories on the verdict sheet asked, in part, the following questions:

> (1) Was Whelan a "qualified" individual under the ADA?[4]
>
> (2) Did Teledyne violate the ADA by failing to reasonably accommodate Whelan?
>
> (3) Did Teledyne violate the ADA by failing to engage in the interactive process with Whelan, in good faith?

---

[3] The employee does not bear the burden to propose specific accommodations under the law of our Circuit. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296 , 315 (3d Cir. 1999). Neither party ever challenged the jury instructions, and the accuracy of the instructions is not before us.

[4] The parties agreed that Whelan was disabled under the ADA, and so the jury did not consider that question.

(4) Did Teledyne violate the ADA by terminating Whelan on account of his

disability?

The Court instructed the jury not to reach the interactive process claim (question #3) in

the absence of finding Teledyne liable for failure to accommodate (question #2). Neither

party objected.

The jury found Whelan "qualified" but found Teledyne not liable for

discriminatory discharge termination or failure to reasonably accommodate. In

accordance with the Court's instructions, the jury did not respond to question three

regarding the interactive process claim.

II.     Discussion

A.      Standard of Review

Judgment as a matter of law may be granted only if "as a matter of law, the record

is critically deficient in that minimum quantity of evidence from which a jury might

reasonably afford relief." Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249

(3d Cir. 2001) (citation omitted). Review of a district court's denial of a motion for

judgment as a matter of law under Fed. R. Civ. Proc. 50(b) is plenary, id., and we take the

facts in the light most favorable to the non-moving party. Williamson v. Consol. Rail

Corp., 926 F.2d 1344, 1348 (3d Cir. 1991).

A motion for a new trial may be granted when a party contends that the verdict is

against the weight of the evidence "only when the record shows that the jury's verdict

resulted in a miscarriage of justice or where the verdict, on the record, cries out to be

5

overturned or shocks our conscience." Grazier v. City of Philadelphia, 328 F.3d 120, 128 (3d Cir. 2003) (citation omitted). "In reviewing the district court's denial of [a] motion for a new trial, we must view the evidence in the light most favorable to the non-moving party." Id. (quoting Caruolo v. John Crane, Inc., 226 F.3d 46, 54 (2d Cir. 1999) (citation omitted)). We review the District Court's denial of a new trial under the more deferential abuse of discretion standard. Olefins Trading, Inc. v. Han Young Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993).

B.     Judgment as a matter of law

The District Court properly denied Whelan's motion for judgment as a matter of law because sufficient evidence supports the verdicts.[5]

1.     Reasonable accommodation claim

First looking at the charge Whelan failed to object to, and viewing the facts most favorably to the verdict winner, Teledyne, a jury could find that Teledyne did not fail to provide Whelan a reasonable accommodation prior to firing him. Teledyne accommodated Whelan at every turn. In 1993, Teledyne placed Whelan in an outside sales job when he could no longer work as a sales engineer, and then two years later it created a home-based marketing position for Whelan when his vision deteriorated further. Teledyne understood that Whelan suffered a degenerative eye disease, and it never

---

[5] Whelan fails to identify a single evidentiary insufficiency other than as it relates to the interactive process. Assuming Whelan had articulated a separate ground for insufficiency of the reasonable accommodation and discriminatory discharge verdicts, we also find no insufficiency.

6

doubted that Whelan was disabled. Teledyne did not require Whelan to undergo a medical examination, but it sent at least two letters to Whelan's prior counsel requesting information about Whelan's need for an accommodation at the Grant facility. Teledyne took the position that it was ready to accommodate Whelan if he was willing to move along with the rest of the marketing department. Whelan's attorney repeatedly responded with the same proposal: that Whelan be permitted to continue working from home in Pittsburgh. Throughout the interactive process, Whelan insisted solely on this accommodation.

When an employee "insists on a single accommodation that is unreasonable as a matter of law, then the employee will be at fault for the breakdown in the interactive process." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 316 n.7 (3d Cir. 1999) (discussing Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d Cir. 1998)). The record supports a finding that working from home was unreasonable. Teledyne had consolidated marketing operations in Grant in order to enhance supervision in the department and realize administrative efficiencies. By the end of 1998, Whelan was the only non-outside salesperson working outside of Grant. Whelan's insistence on working from home would deprive Teledyne of the efficiency gains and better quality work product it wanted from consolidation.

An employer is not liable if the employee fails to supply it information necessary to devise an appropriate accommodation, or if the employee "does not answer the employer's request for more detailed proposals." Id. at 317. The record reveals that

7

Whelan failed to respond substantively to Teledyne's requests for proposals. The record also supports a finding that Whelan never expressed a willingness to transfer to Grant until trial. Viewing the facts most favorably to Teledyne, the non-moving party, a jury could reasonably find that Teledyne did not fail to reasonably accommodate Whelan.

### 2. Discriminatory discharge

Similarly, Whelan has not shown the record lacks the "minimum quantity of evidence" to justify the jury's verdict on his discriminatory discharge claim. Trabal, 269 F.3d at 249 (citation omitted). A reasonable jury could readily find that Teledyne fired Whelan because he refused to transfer, not because he was disabled. Teledyne tried to engage Whelan in a dialogue about his needs, but his attorney refused to budge from the one and only proposal of working from home in Pittsburgh. Moving to Grant was a prerequisite to Whelan's continuing employment; when he refused to move, he was terminated.

### C. Motion for a new trial

The District Court did not abuse its discretion in denying Whelan's motion for a new trial. Whelan challenges the jury's verdicts on all claims as against the weight of the evidence, but he points only to the purported dearth of evidence that Teledyne participated in the interactive process. Ample evidence supports a finding that Teledyne communicated with Whelan in good faith, tried to accommodate Whelan, and fired Whelan only once he refused to transfer to Grant. Therefore, the verdicts do not shock the conscience or constitute a manifest injustice.

8

D.      Waiver

Whelan's other arguments lead him down a path to nowhere.  Whelan contends that Teledyne failed to participate in the interactive process in good faith, but he waived this argument by failing to object to the special interrogatories on the verdict sheet.   The special interrogatories instructed the jury to skip the interactive process claim if it did not find Teledyne liable for failure to accommodate.  Finding no liability for failure to accommodate, it never reached the interactive process claim.  Whelan never objected to the special interrogatories at the charging conference, at trial, during deliberations, in post-trial motions, or even on appeal.  Therefore, Whelan waived his right to any further consideration of his interactive process claim.  Inter Med. Supplies Ltd. v. EBI Med. Sys., Inc., 181 F.3d 446, 463 (3d Cir. 1999) (party waived objection to special interrogatories on verdict sheet by failing to raise the issue before the jury was excused).

E.      Interactive process

Whelan basically errs in presuming that the failure to participate in the interactive process is a separate claim apart from the failure to accommodate claim, and that the interactive process requires an employer to request the employee to undergo a medical exam.  Participation in the interactive process is simply part of the employer's duty to determine if a reasonable accommodation exists.  The ADA envisions the interactive process as the means by which a disabled employee and his employer share information to devise a potential accommodation.  Taylor, 184 F.3d at 317.  Once an employee notifies his employer of his need for an accommodation for his disability, the employer

9

must communicate with the employee and solicit whatever information is necessary to devise a suitable accommodation. Id. The interactive process requires participation from both parties because "each party holds information the other does not have or cannot easily obtain." Id. at 316. An employer may satisfy its obligation to participate in the interactive process in any number of ways, e.g., by exchanging letters with the employee to identify and describe vacant positions. See Taylor, 184 F.3d at 317 (discussing Mengine v. Runyon, 114 F.3d 415, 421 (3d Cir. 1997)).

Neither the ADA nor the implementing regulations mandate a particular method for gathering information. The law simply requires that the employer solicits information from the employee that will help the employer understand the employee's limitations, regardless of the form of this information-gathering process. Cf. Taylor, 184 F.3d at 315 ("[I]t makes sense to place the burden on the employer to request additional information that *the employer believes it needs*.") (emphasis added). Indeed, the hallmark of the interactive process is that it be "flexible." Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 771 (3d Cir. 2004).

Even when an employer fails to participate in the interactive process in good faith, it may escape liability by showing that no reasonable accommodation was possible. Taylor, 184 F.3d at 319. Therefore, failure to participate in the interactive process is not a ground for liability unless the employee has proven a failure to accommodate, namely, that a reasonable accommodation existed and the employer unreasonably failed to provide it. Ultimately, Whelan bases his entire appeal on the incorrect premise that Teledyne

10

violated the ADA by failing to require a medical examination of Whelan, but he misunderstands both the nature of the interactive process and its purpose in facilitating the objectives of the ADA.

III.    Conclusion

We conclude that sufficient evidence supports the verdicts, and that Whelan waived his right to challenge the jury's failure to consider his interactive process claim. The District Court's order denying Whelan's motions for judgment as a matter of law and for a new trial is AFFIRMED.[6]

---

[6] Teledyne has also filed motions to strike part of the record, for leave to file a supplemental appendix and for reimbursement of costs entailed in producing a supplemental appendix. The motions will be granted. Whelan inserted into the appendix documents that were not part of the record before the District Court. It is well established that a reviewing court may not consider evidence that is not part of the record. United States v. Donsky, 925 F.2d 746, 749 (3d Cir. 1987). Whelan also downloaded what appears to be a printout of the text of the ADA. Whelan maintains that the Third Circuit Local Appellate Rules required him to include this printout, but that is not so. The Third Circuit Local Appellate Rules require that the parties include in the record relevant statutes, rules, regulations or unpublished opinions *if not readily available*. Federal statutes, rules and regulations are readily available in print and through on-line publishers, and therefore Whelan's inclusion of those materials was improper. Regarding Teledyne's motion for costs, it appears that Whelan's appendix was highly edited and incomplete, necessitating Teledyne's supplementation. Deisler v. McCormack Aggregates, Co., 54 F.3d 1074, 1089 n. 22 (3d Cir. 1995). Accordingly, Whelan will bear Teledyne's costs in creating the supplemental appendix.

11